**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DENNIS JACOBS,** | **Civil Action No. 15-4826 (FLW)** |
| **Petitioner,** | |
| **v.** | **OPINION** |
| **UNITED STATES OF AMERICA,** | |
| **Respondent.** | |

**WOLFSON, UNITED STATES DISRICT JUDGE:**

## I.　　INTRODUCTION

This § 2255 motion arises out of Dennis Jacobs's ("Jacobs") conviction and ten-year sentence for possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5) and (b)(2). Pursuant to Fed. R. Civ. P. 78, upon review of all submissions, this matter is decided without oral argument, and for the reasons stated below, the Court denies the Motion and denies a certificate of appealability.

## II.　　FACTUAL BACKGROUND & PROCEDURAL HISTORY[1]

### a.　Jacobs's Arrest

On September 9, 2011, New York/New Jersey Port Authority Police Department ("Port Authority") detectives received information from an individual named Claudia Richardi ("Ms. Richardi") that the father of then-17-year-old M.E. was concerned for his son, who had left his home in Italy and was due to arrive later that day at Newark Liberty International Airport

---

[1] The Court recounts only the facts necessary to this Opinion.

("Newark Liberty") on a flight from Rome. (Ex. A.[2]) M.E.'s father had called a friend, Venanzio Pasubio, to tell him that M.E. had run away from home and was to be picked up at the airport by Jacobs. (*Id.*) Jacobs had given M.E. a specific address in Ewing, New Jersey, which M.E. had relayed to his father. (*Id.*) Ms. Richardi, who was Mr. Pasubio's girlfriend, contacted law enforcement after discovering on the internet that Jacobs was a registered sex offender. (*Id.*)

The Port Authority officers sought to corroborate the information that Ms. Richardi provided. A computer check revealed that Jacobs was, indeed, a registered sex offender in the State of New Jersey. (Ex. A.) Jacobs had been convicted in 1988 of sexually assaulting his adopted minor daughter, in violation of N.J.S.A. 2C:14-2(a)(2)(c), and had been sentenced to 15years in prison. (Ex. C, ¶¶ 52-62.) Jacobs then was convicted in 2000 for attempted sexual assault, in violation of N.J.S.A. 2C:14-2 and 2C:5-1, after he was caught attempting to rendezvous with a 15-year-old male whom he had met in an online chat room—in reality an undercover police officer—and was sentenced to six years in prison. (*Id.* ¶¶ 63-68.) Based on these convictions, Jacobs was subject to community supervision for life and, as a result, he was prohibited from having any contact with minors and from accessing the internet. (*Id.* ¶¶ 63, 68-70.)

Having confirmed that Jacobs was a registered sex offender, Port Authority detectives then confirmed that M.E. was due to arrive in Newark on September 9, 2011 on an inbound flight from Rome. They also learned from United States Customs and Border Protection that M.E. previously had entered the United States on July 17, 2011, and had remained in the United States until August 9, 2011. (Ex. A.) In connection with that visit, M.E. had listed Jacobs's Ewing address—the same address that he had given his father for the second visit—as his

---

[2] All exhibits are attached to the government's Answer unless otherwise noted.

destination. (*Id.*) Based on this information, Port Authority detectives established surveillance at Newark Liberty in anticipation of M.E.'s arrival from Rome. (*Id.*) They observed a vehicle (registered in Jacobs's name) pull into the short-term parking lot for the international terminal at the airport. (*Id.*) The detectives saw Jacobs get out of his car, go inside the terminal, and meet M.E. in a passenger greeting area. (*Id.*) The officers observed Jacobs and M.E. kiss in the greeting area, and together walk back to Jacobs's vehicle in the parking lot. (*Id.*) At that point, the detectives approached Jacobs, placed him under arrest, and read him his Miranda rights. (*Id.*) The officers asked Jacobs if he would consent to a search of his car, and he declined. (*Id.*) The officers then placed Jacobs in the back of a patrol car, at which time Jacobs "stated that he would consent to a search of his vehicle because there was a computer in the vehicle [that] had evidence on it." (*Id.*) The officers did not, however, search the vehicle at that time. (*Id.*)

After arresting Jacobs, law enforcement officers interviewed M.E. at Newark Liberty. (Exs. A, B.) During the detailed interview, M.E. told the officers that he had met Jacobs on the internet in late January 2011, when M.E. was 16 years old. (Ex. B.) M.E. stated that he and Jacobs sent e-mails and chatted every day with each other on the internet. (*Id.*) They traded sexually explicit photographs of each other and filmed themselves nude in front of a webcam and masturbated for each other. (*Id.*) M.E. and Jacobs also engaged in sexually explicit chats over the internet. (*Id.*) M.E. said that Jacobs told him that he kept all of the photographs and videos of M.E on compact discs ("CDs") at his house so he (Jacobs) could look at them. (*Id.*) M.E. also told law enforcement that he had told Jacobs initially that he was 18 years old but, in May 2011, M.E. informed Jacobs that he was actually 16 years old. (Ex. B.) M.E. also confirmed that he had visited Jacobs once before. (*Id.*) M.E. said that he had flown in from Italy in July 2011 and that Jacobs had picked him up at Newark Liberty. (*Id.*) M.E. stayed with Jacobs at his

address in Ewing, New Jersey, until August 9, 2011. (*Id.*) M.E. stated that during this visit, Jacobs engaged in anal and oral sex with him approximately six or seven times. (*Id.*) M.E. said that Jacobs also showed him photographs of other young, naked males during the visit. (*Id.*) Finally, M.E. told law enforcement that after he had returned to Italy in August 2011, he told Jacobs that he wanted to return to New Jersey. (Exs. A, B.) Jacobs instructed M.E. to change the date on his birth certificate so that Jacobs would not get into trouble. (*Id.*) M.E. had a friend do so, and afterward M.E. sent the altered birth certificate to Jacobs so that Jacobs could see if the certificate "looked good." (*Id.*)

Jacobs was charged under state law with knowingly exhibiting obscene material to a person under the age of 18, in violation of N.J.S.A. 2C:34-3B. (Ex. D.) Two days later, after admitting to his parole officer that he had accessed a computer and the internet, he was charged with knowingly violating the terms of his community supervision for life, in violation of N.J.S.A. 2C:43-6.4D, and an arrest warrant issued.[3] (*Id.*)

### b. The State and Federal Search Warrants

On September 10, 2011, the day after Jacobs's arrest, law enforcement officers sought and obtained search warrants, under New Jersey law, for Jacobs's residence and vehicle. (Ex. E). Port Authority Detective Lawrence Mays's affidavit in support of the search warrants set forth the information obtained during the investigation—including the information received from Ms. Richardi, law enforcement's investigation and physical surveillance, law enforcement's

---

[3] In July 2012, Jacobs was indicted in the Superior Court of New Jersey, Mercer County, with knowingly exhibiting obscene material to a person under the age of eighteen; knowingly exhibiting obscene materials with the knowledge or purpose to arouse, gratify or stimulate himself or another while he was at least four years older than the victim; and violating the terms of his community supervision for life. (Ex. G.) Those charges ultimately were dismissed.

observation of M.E.'s arrival at Newark Liberty and his kiss with Jacobs at the terminal, Jacobs's voluntary statement from the back of the patrol car, and M.E.'s statements during his interview with law enforcement. (*See id.*) The officers executed the searches of Jacobs's residence and vehicle on September 10, 2011 and September 13, 2011, respectively. Pursuant to those searches, law enforcement seized a laptop, portable disc drives, media discs, digital cameras, a cellular phone, gay male pornography, sex toys, and other miscellaneous items. (Ex. C, ¶ 17.)

On October 7, 2011 and October 12, 2011, law enforcement officers sought and obtained communications data warrants, again pursuant to New Jersey law, to search the electronic and computer media that had been recovered from the search of Jacobs's residence and vehicle, as well as M.E.'s laptop computer, which law enforcement also had seized. In his affidavits in support of the communications data warrants, Detective Gary M. Wasko of the Mercer County Prosecutor's Office explained, among other things, that probable cause existed because M.E. had stated in his interview that he and Jacobs had sent each other naked pictures over the internet and that Jacobs saved the images on CDs. (Ex. F.) Detective Wasko also explained that, based on his training and experience, individuals who possess child pornography usually do so using computer or other electronic media. (*Id.*)

Pursuant to the communications data warrants, law enforcement conducted a forensic examination of, inter alia, M.E.'s netbook computer and the laptop found in Jacobs's vehicle. (Ex. C, ¶ 20.) The forensic examination identified, among other things, electronic instant messages between M.E. and Jacobs. (*Id.*) In one of those messages, M.E. told Jacobs during a chat message on May 13, 2011 that he was 16 years old. (*Id.* ¶ 22.) Jacobs responded by stating that "[i]t could possibly put me in jail" and that "I thought you could be younger than 18 because of how sweet and loving you are with me all the time." (*Id.* ¶ 22.)

On March 13, 2012, a federal Magistrate Judge authorized a federal search warrant for Jacobs's residence and a storage unit located at the residence. (ECF No. 18-1, Corrected Ex. H.[4]) The search warrant authorized law enforcement to search for child pornography and related items on, inter alia, any of the computer devices, cameras, images, and documents located in Jacobs's home or the storage unit. (*Id.*) In his affidavit in support of the warrant, Special Agent Mark Lubischer of U.S. Homeland Security Investigations set forth the information obtained during the investigation—including the information received from Ms. Richardi, law enforcement's investigation and physical surveillance, law enforcement's observation of M.E.'s arrival at Newark Liberty and his kiss with Jacobs at the terminal, Jacobs's voluntary statement from the back of the patrol car, M.E.'s statements during his interview with law enforcement, and the results of the prior searches. (*See id.* at ¶¶ 16-27.) Mr. Lubischer then explained that in December 2011, law enforcement officers interviewed the property manager of Jacobs's residence, who indicated that Jacobs maintained a storage unit at the residence that had not been searched during the initial search. (*Id.* ¶¶ 28-31.) The property manager also told law enforcement that after the state search warrant was executed in September 2011, he had entered Jacobs's apartment to work on the heating system, and noticed a number of CDs and a flash drive still in the apartment. (*Id.*) After learning this information, law enforcement then spoke with a detective from the Mercer County Prosecutor's Office who had been present during the September 2011 search of Jacobs's residence. (*Id.*) The detective noted that at the time of the

---

[4] The original Exhibit H is attached to the government's Answer but is missing pages. (*See* ECF No. 14-9.) Jacobs noted this issue in his Reply Brief. (*See* ECF No. 17.) On February 10, 2016, the government submitted a corrected Exhibit H that includes all pages of the federal search warrant. (*See* ECF No. 18-1.) The Court refers only to Corrected Exhibit H in the instant Opinion.

original search, not all computer media had been seized, and that law enforcement had been

unaware at the time that Jacobs maintained a storage unit at the residence. (*Id.*)

The search pursuant to the federal search warrant yielded two hard drives, one flash

drive, and one netbook from the residence and storage unit. A forensic review of those items

identified a total of 28 of pornographic images of M.E. In addition, a video of M.E. bathing nude

was identified on multiple media as well. (Ex. I.) Law enforcement also located approximately

297 sexually explicit chats between Jacobs and M.E.[5] (*Id.*)

### c. The Federal Complaint, Appointment of Counsel, and Plea Negotiations

On September 28, 2012, Jacobs was charged in the District Court for the District of New

Jersey with one count of possession of child pornography, in violation of 18 U.S.C. §

2252A(a)(5)(B) and (b)(2). (Ex. J.) In addition to § 2252A, the complaint also included an

allegation that Jacobs was criminally liable under 18 U.S.C. § 2, the federal aiding and abetting

statute. (*Id.*) Jacobs was transferred from state to federal custody on January 8, 2013, and he had

his initial appearance before the Magistrate Judge that day. The Court appointed David E.

Schafer, Esq., who had been an Assistant Federal Public Defender for approximately 28 years, to

represent Jacobs.  (Ex. K (Affidavit of David E. Schafer ("Schafer Aff."), ¶ 3.)

Shortly after Jacobs's initial appearance, Assistant United States Attorney ("AUSA")

Nelson S.T. Thayer, Jr. made a written plea offer to Jacobs, which contemplated a plea to

distribution and/or receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2) and

(b)(l).3 (Schafer Aff. ¶ 9.) Given Jacobs's two prior convictions for sex offenses involving

minors, the initial plea offer would have subjected Jacobs to a statutory mandatory minimum of

---

[5] The search also recovered M.E.'s falsified birth certificate that M.E. allegedly sent to Jacobs.
(*See id.*)

15 years in prison, and a maximum prison sentence of 40 years. (*See* Exs. N, Q.) *See also* 18 U.S.C. § 2252A(b)(1). AUSA Thayer also provided Mr. Schafer a packet of early discovery. (Schafer Aff. ¶ 4; Ex. L.)

During the initial plea negotiations between the parties, the government intended to require Jacobs to plead guilty to receipt or distribution of child pornography, an offense carrying a statutory mandatory minimum term of 15 years' imprisonment. *See* 18 U.S.C. § 2252A(a)(2), (b)(1). AUSA Thayer also indicated to Mr. Schafer that, in addition to a receipt/distribution offense, the government would pursue a charge of production of child pornography if a pre-indictment resolution could not be reached.[6] (Schafer Aff., ¶ 10.) Plea negotiations continued for several months. (Schafer Aff. ¶¶ 11-12.) On May 2, 2015, AUSA Thayer made a second written plea offer to Jacobs (the "May 2 plea offer"), which called for Jacobs to plead guilty to possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5) and (b)(2), rather than the more serious distribution/receipt charge that the initial plea offer had contemplated. (Ex. R.)

By letter dated April 11, 2013, Mr. Schafer updated Jacobs on the status of the plea negotiations, advised him that M.E.'s testimony would <u>not</u> be necessary for the government to prove Jacobs guilty of possession of child pornography, advised him about a possible plea agreement for possession of child pornography rather than one contemplating a charge of receipt/distribution of child pornography, and cautioned him about the risks of rejecting a plea agreement to a possession charge:

> If and when I receive a proposed plea agreement for possession—
> which they can prove with only law enforcement witnesses and
> need not bring anyone over from Italy—I will come to the jail and

---

[6] Given his two qualifying prior sex offense convictions involving minors, a conviction on a production charge would carry a statutory mandatory minimum sentence 35 years' imprisonment. *See* 18 U.S.C. § 2251(e).

> review it with you. At that time, you can either accept the plea or decide to go to trial, which could result in convictions for receipt and production, which carry much longer sentences than possession.

(Ex. M.)

After receiving the May 2 plea offer, Mr. Schafer enclosed the plea agreement along with a letter to Jacobs dated May 7, 2013. (Ex. N.) In that letter, Mr. Schafer explained that "the Government ha[d] compromised from its original position that [Jacobs] must plead guilty to distribution of child pornography," and that it would accede to a possession charge only. (*Id.*) Mr. Schafer noted that the revised plea offer was "the result of months of negotiations and [was] the 'best' and final offer the Government will make." (*Id.*) Counsel then outlined the relative sentencing considerations for his client: If Jacobs pleaded guilty, counsel believed that, given his age and the circumstances of the case, Jacobs had a "good chance" of receiving the mandatory minimum sentence of ten years. (*Id.*) By contrast, if Jacobs proceeded to trial, Mr. Schafer explained that he believed Jacobs had "no chance of being acquitted of the possession or distribution charges." (*Id.*) Mr. Schafer also noted that he did not believe that there were any Fourth Amendment issues with the searches of Jacobs's residence, vehicle, or computer equipment, because although the investigation had been initiated from information provided by Ms. Richardi, that information then had been corroborated by law enforcement officers' own investigation and observations. (*Id.*). Mr. Schafer advised his client that he had a choice: Jacobs could plead guilty to a statutory mandatory minimum sentence of ten years, or risk serving a mandatory minimum of at least 15, and perhaps 35, years if he went to trial on charges of distribution and production of child pornography. (*Id.*) He reminded Jacobs that "that a loss at trial would probably quadruple your imprisonment time." (*Id.*)

By letter dated May 16, 2013, Mr. Schafer sent Jacobs some of the instant messages that the government had recovered, which showed Jacobs's knowledge of M.E.'s age. (Ex. O.) In the accompanying letter, Mr. Schafer explained that Jacobs's messages to M.E. would be admissible at trial under Federal Rule of Evidence 801(d)(2)(A), and that M.E.'s responsive communications to Jacobs likely would be admissible under a hearsay exception. (*Id.*)

Jacobs and Mr. Schafer signed the plea agreement on May 20, 2013. (Ex. R.) The plea agreement included a stipulation of facts and a limited waiver of direct appeal and collateral attack based on sentencing error with respect to the stipulation. (*Id.* at 7.) Thereafter, Jacobs requested changes to the factual stipulations in the agreement to address the timeframe during which Jacobs discovered M.E.'s actual age. The proposed revision would state that when Jacobs and M.E. first made contact via the internet in January 2011, M.E. was sixteen years old but had informed Jacobs that he was eighteen years old, and that M.E. did not admit to Jacobs that he was sixteen years old until May 13, 2011. (*See* Ex. P at 4.) By letter dated May 30, 2013, Mr. Schafer informed Jacobs that he had sent an email to AUSA Thayer with the requested changes, which AUSA Thayer apparently rejected.[7] (*Id.*)

In the May 30 letter, Mr. Schafer also, among other things, again advised Jacobs of the risks of not proceeding with a guilty plea pursuant to the plea agreement. Counsel noted that if AUSA Thayer "has to go before the Grand Jury to get an indictment, the possession deal will be off the table and the indictment will include counts of production and distribution that will not be dismissed." (*Id.*)

---

[7] According to the government, AUSA Thayer ultimately rejected the request, but noted that it was a subject that could be addressed at the plea hearing.

On August 15, 2013, Mr. Schafer sent a letter to Jacobs summarizing the events of the case, the negotiations with the government, and his legal advice to date. (Ex. Q.) Mr. Schafer again discussed the benefits of pleading guilty: While the government's initial plea offer would have carried a sentence of 15 to 40 years, under the May 2 plea offer, Jacobs would plead guilty to a crime carrying only a ten-year mandatory minimum sentence, which counsel believed Jacobs would receive. (*Id.*)

In the August 15, 2013 letter, Mr. Schafer also addressed several defenses that Jacobs apparently had put forth. Specifically, counsel addressed Jacobs's argument that the government lacked probable cause to arrest him, and Mr. Schafer cited case law supporting his analysis. (*Id.*) Mr. Schafer also explained that law enforcement's search of Jacobs's criminal record was not an unlawful search because it was simply a search of law enforcement databases. (*Id.*)

Counsel then responded to Jacobs's argument that the arrest was based on unverified hearsay from an informant. Mr. Schafer explained that the officers only relied on the informant's initial tip to establish surveillance at the airport; accordingly, the hearsay upon which the investigation was initiated would not need to be introduced at trial. (Ex. Q.) He also explained to Jacobs that, in his professional judgment, law enforcement had probable cause to believe that a felony had been committed when they observed that "a twice-convicted sex offender was kissing a minor from Italy." (*Id.*) And at the very least, Mr. Schafer advised that given the "transient nature of the airport setting," the officers most likely had the right to detain Jacobs temporarily and interview the minor. (*Id.*) Mr. Schafer also explained that even if probable cause was lacking at the time of the arrest, the "good faith" exception under United *States v. Leon*, 468 U.S. 897 (1984), likely applied. (*Id.*) Mr. Schafer then explained that law enforcement undoubtedly had probable cause to arrest Jacobs once they spoke to M.E., because M.E. provided information

about the images transmitted to Jacobs over the internet and the sexual contact between himself and Jacobs. (*Id.*) Finally, Mr. Schafer explained that Jacobs lacked standing to challenge the statements that M.E. had given to law enforcement. (*Id.*) Mr. Schafer concluded his letter by advising his client, "I would be doing you a great disservice to tell you that, in my professional experience as a Federal Public Defender in the District for almost twenty-eight years, you have any chance whatsoever of having any of the evidence gathered against you suppressed, or to be acquitted at trial." (Ex. Q.) He reiterated that under the circumstances, the Court likely would impose the minimum sentence of ten years if Jacobs were to plead guilty. (*Id.*) Mr. Schafer then acknowledged that "I may be wrong in my professional opinion." (*Id.*) He advised Jacobs expressly that pleading guilty or proceeding to trial "is a difficult choice, but one that only you can make. Whatever choice you decide upon, we will inform the Court on September 13, after which time there will be no going back." (*Id.*)

### d. The Guilty Plea and Sentence

On September 13, 2013, Jacobs appeared before the Honorable Joel A. Pisano, U.S.D.J. (now retired), and pleaded guilty to a one-count information charging Jacobs with possession of child pornography. (*See* Crim. No. 13-601 (FLW), Dkt. 14-18.)

At the plea hearing Jacobs averred that his plea was voluntary and that he had sufficient time to consult with his attorney. (*See* Ex. S, 8:22-9:8.) Judge Pisano explicitly asked Jacobs "[h]as anybody forced you to plead guilty", and Jacobs responded "No." (*Id.* at 9:7-8.). Jacobs then admitted the following facts, which track the stipulations in the plea agreement: he first contacted M.E. over the internet when the victim was 16 years old in January 2011; he asked M.E. to send him sexually explicit images of himself over the internet; M.E. did so multiple times; and he viewed these images and possessed them on his electronic media. (*Id.*, 12:7-25.)

Jacobs also clarified that he "didn't find out that [M.E.] was 16 until May 13[, 2011].[8] (*Id.* at 12:24-25.) The Court asked Jacobs whether child pornography was seized from his residence and storage unit on March 24, 2012, and Jacobs affirmed that it was. (*Id.* at 13:17-25.) The Court then asked Jacobs whether he was "aware that [he] possessed this child pornography," to which Jacobs answered "Yes." (*Id.* at 14:1-2.) Judge Pisano accepted the guilty plea, finding that the plea was "knowing and voluntary." (*Id.* at 14:13-15.)

On July 9, 2014 Judge Pisano sentenced Jacobs to the statutory mandatory minimum term of ten years' imprisonment. (Crim. No. 13-601 (FLW), Dkt. 23.) Jacobs did not appeal his conviction or sentence. This motion followed.

### e. Jacobs's § 2255 Motion

Jacobs's timely motion was docketed on June 30, 2015 and is dated June 17, 2015. (ECF No. 1, at 41.) The matter was assigned to this Court. The Court administratively terminated the

---

[8] When the Court asked Jacobs if he signed the [plea agreement] voluntarily and agree[d] to be bound by all its terms", Jacobs responded as follows:

> A:      Yes.
>
> Well, the only thing I don't like about the plea agreement on Schedule A, I asked the wording be changed, especially in Schedule A, 1A.
>
> Q:      Yes?
>
> A:      Any contact beyond the internet, he indicated he was 18 and he contacted me through an adult internet site as being 18 and I believe it was May 12, he confessed to me that he wasn't 18, he was 16, after I received – after we exchanged images. There're the only images between us. I had no exchange between any other minors.
>
> Q:      Okay.
>
> A:      I just want the Court to know this.

(Ex. T, 7:2-13.)

matter because Petitioner submitted his Motion on the wrong from.  (ECF No. 2.)  Petitioner

submitted an Amended Motion on the correct form. The Court directed the government to

answer the Motion (ECF No. 9.) The government sought and received an extension of time and a

limited waiver of attorney client privilege with respect to the issues presented in the Amended

Motion. (ECF Nos. 8, 11-13.) The government timely filed its Answer on January 15, 2016, and

Jacobs filed his Reply Brief on February 9, 2016. (ECF Nos. 14, 17.)  The matter is fully briefed

and ready for disposition.

### III.    STANDARD OF REVIEW

Title 28, United States Code, Section 2255 permits a court to vacate, correct, or set aside

a sentence

> upon the ground that the sentence was imposed in violation of the
> Constitution or laws of the United States, or that the court was
> without jurisdiction to impose such a sentence, or that the sentence
> was in excess of the maximum authorized by law, or is otherwise
> subject to collateral attack. . . .

28 U.S.C. § 2255.

A criminal defendant bears the burden of establishing his entitlement to § 2255 relief.

*See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005).  Moreover, as a § 2255 motion to

vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher

hurdle than would exist on direct appeal." *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir.

2014) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)).  In considering a motion to

vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations

unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432

F.3d 542, 545 (3d Cir. 2005) (internal quotation marks and citation omitted).  "It is the policy of

the courts to give a liberal construction to *pro se* habeas petitions." *Rainey v. Varner*, 603 F.3d

189, 198 (3d Cir. 2010).  The Court may dismiss the motion without holding an evidentiary

hearing if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. *See* 28 U.S.C. § 2255(b); *Liu v. United States*, No. 11–4646, 2013 WL 4538293, at *9 (D.N.J. Aug. 26, 2013) (citing *Booth*, 432 F.3d at 545–46). Furthermore, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *Johnson v. United States*, 294 F. App'x 709, 710 (3d Cir. 2008) (*United States v. Thomas*, 221 F.3d 430, 437 (3d Cir.2000)).

## IV.    <u>ANALYSIS</u>

Jacobs's Amended Motion raises three specific grounds for relief, alleging that Jacobs received constitutionally ineffective assistance of counsel because his court-appointed attorney (1) failed to seek suppression of evidence obtained as a result of Jacobs's warrantless arrest; (2) failed to seek suppression of evidence recovered pursuant to the state and federal search warrants; and (3) failed to negotiate a conditional guilty plea with the government. (ECF No. 6, Amended Pet. at 5-8.) Construed liberally, Jacobs's Memorandum in support of his Amended Motion also appears to allege that his plea was not knowing and voluntary because Mr. Schafer coerced him into pleading guilty despite a lack of evidence to support the charges.[9]  (*See* Pet. Mem.7-8.)  Finally, Jacobs appears to contend for the first time in his Reply Brief that his

---

[9] In a single paragraph of the facts section of his Memorandum, Jacobs provides the legal standard for when an attorney must consult with his client regarding an appeal.  (Pet. Mem. 5.) *See, e.g., Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). Jacobs does not raise this claim as a separate ground for relief in his Amended Motion or Memorandum; in the exhaustion section of his Amended Motion, Jacobs states only that the grounds for relief raised in his Amended Motion were not previously presented in federal court and that his "direct appeal was not filed due to attorney noncompliance of defense counsel and time had elapsed[.]"  (*See* Am. Pet. at 11.) The Court does not construe these stray statements as a separate claim for relief. Even if the Court were to view these statements as a separate claim for relief, it would be subject to dismissal as a vague and conclusory allegation lacking in any factual detail or support, which may be dismissed by the Court without further investigation. *See Johnson*, 294 F. App'x at 710.

attorney was deficient for failing to point out inaccuracies in the factual basis for his guilty plea. (*See* ECF No. 17-1, Affidavit attached to Pet. Reply.)

Jacobs's grounds for relief allege ineffective assistance of counsel in connection with his guilty plea. The Sixth Amendment's guarantee of effective counsel extends to plea bargaining, *Lafler v. Cooper*, 566 U.S. 156 (2012).  Claims of ineffective assistance during plea bargaining are analyzed under the familiar two-part *Strickland* standard, requiring performance below an objective standard of reasonableness and prejudice. *Lafler*, 566 U.S. at 162-63.  If a petitioner is sentenced after a guilty plea, he or she may obtain relief under § 2255 if he or she can show that the plea was not knowing and voluntary. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). A guilty plea by a petitioner who was denied his or her Sixth Amendment right to effective assistance of counsel is not knowing and voluntary – an ineffective assistance of counsel claim can thus serve as the basis for relief under § 2255. *Id.* at 59.

A defendant claiming ineffective assistance of counsel must show both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). On the first prong, the defendant must demonstrate that trial "counsel's representation fell below an objective standard of reasonableness," which is an inquiry we undertake with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 688–89. To establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  But when "a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, [courts] do not ask whether, had he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain." *Lee v. United States*, 582 U.S. ——, ——, 137 S.Ct. 1958, 1965 (2017). Instead, "when a defendant claims that his

16

counsel's deficient performance deprived him of a trial by causing him to accept a plea, the

defendant can show prejudice by demonstrating a reasonable probability that, but for counsel's

errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* (internal

quotation marks omitted) (quoting *Hill*, 474 U.S. at 59).

### a. Failure to File the Motions to Suppress  (Grounds One & Two)

It is well established that "counsel cannot be deemed ineffective for failing to raise a

meritless claim." *Werts v. Vaughn*, 228 F.3d 178, 202 (3d Cir. 2000).  Thus, the Supreme Court

has held that in order to show deficient performance based on the merits of a suppression motion,

a defendant must show that "no competent attorney would think a motion to suppress would

have failed." *Premo v. Moore*, 562 U.S. 115, 124 (2011) (addressing *Strickland's* performance

prong) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986)); *see also Lee*, 582 U.S. at

___, 137 S.Ct. 1958 (To establish prejudice when the "decision about going to trial turns on [a

defendant's] prospects of success and those are affected by the attorney's error—for instance,

where a defendant alleges that his lawyer should have but did not seek to suppress [evidence]"—

the defendant must show that "he would have been better off going to trial," a showing that

unquestionably implicates (at least to some degree) the merits of the alleged Fourth Amendment

violation); *Arvelo v. Sec'y, Florida Dep't of Corr.*, 788 F.3d 1345, 1348 (11th Cir. 2015)

(explaining that "[i]n cases like this one, where a [defendant] faults his lawyer for failing to

pursue a motion to suppress prior to entering a plea, both the deficient performance and prejudice

prongs of *Strickland* turn on the viability of the motion to suppress.").  As such, the Court turns

to the merits of Jacobs's Fourth Amendment claims.

Jacobs argues that at the moment he was placed under arrest in the parking lot at Newark

Liberty, the Port Authority officers lacked probable cause to believe he had committed a crime.

Jacobs contends that the officers improperly relied on the "third party hearsay" of Ms. Richardi, and did not verify at the moment of arrest that Jacobs possessed pornography images of a minor, or exhibited obscene material to a minor. (*See* Pet. Mem. 14-18.) Jacobs states that the information upon which law enforcement relied in effecting the arrest are "unverified," "pure speculation," "unsworn," and "mere allegation."

"[A]warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "It is well established that probable cause for a warrantless arrest exists when, at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *United States v. Glasser*, 750 F.2d 1197, 1205-06 (3d Cir. 1984) (internal quotation marks and alterations omitted). Determining whether "probable cause exists for a warrantless arrest is fundamentally a factual analysis that must be performed by the officers at the scene." *Id.* at 1206. The inquiry must take account of the totality of circumstances, recognizing that probable cause is a "fluid concept [that] turn[s] on the assessment of probabilities in particular factual contexts." *Illinois v. Gates*, 462 U.S. 213, 231 (1983). A reviewing court must "determine whether the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense was being committed." *Id.*; *see also Maryland v. Pringle*, 540 U.S. 366, 371 (2003). In his supporting Memorandum, Jacobs acknowledges that "[s]ufficient probability, not certain[t]y, is the touchstone of reasonableness under the Fourth Amendment." (Pet. Mem. 12-13.)

Here, law enforcement initially relied on information from Ms. Richardi that a minor, M.E., would be arriving in Newark to visit Jacobs, a registered sex offender. The Supreme Court

has held that "in making a warrantless arrest an officer may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." *Gates*, 462 U.S. at 213. An officer may corroborate hearsay information by, among other things, observing the suspect. *Draper v. United States*, 358 U.S. 307, 309-13 (1959). The officers who received Ms. Richardi's initial tip corroborated the information by investigating and then establishing physical surveillance at the airport. They confirmed that Jacobs was a twice-convicted sex offender, and that he was prohibited from contact with minors pursuant to the terms of his community supervision for life. They determined that M.E. was traveling from Newark from Rome and that he previously had visited Jacobs in July 2011. The officers then established surveillance and observed M.E. arrive and meet Jacobs, who had exited a vehicle registered in his name. They observed Jacobs kiss M.E. at the airport and walk with him towards his car. Thus, the information provided by Ms. Richardi was corroborated by the officers' investigation and personal observations.

At the time of Jacobs's arrest, the officers need not have confirmed beyond doubt that M.E. was, in fact, a minor. The officers had been provided information that they then confirmed through investigation and physical surveillance. Jacobs does not dispute that law enforcement corroborated the information provided by Ms. Richardi. Because the information that Ms. Richardi had provided had proven to be reasonably accurate—and particularly in view of Jacobs's prior sex offenses involving minor victims—the officers had probable cause to believe that the individual meeting Jacobs at the airport was a minor. Thus, the officers had probable cause to arrest Jacobs for, inter alia, attempted sexual assault of a minor (an offense for which he had been convicted once before), and violating the terms of his community supervision for life,

which prohibited him from having any contact with minors. (*See* Ex. A.) The arrest was, therefore, consistent with the Fourth Amendment.

The Court further notes that even if Jacobs's initial arrest was unlawful, the key incriminating evidence against Jacobs—the pornographic images and video of M.E., and the instant message communications between Jacobs and M.E.—would not have been suppressed as the "fruit of the poisonous tree," as Jacobs insists. The only evidence obtained directly from the arrest was Jacobs's own voluntary statement to law enforcement that the computer in his vehicle had evidence on it.[10] (*See id.*) Even if that statement were deemed to have been unlawfully obtained, and excised for purposes of reviewing of the subsequent search warrant applications, *see, e.g., Franks v. Delaware*, 438 U.S. 154, 171 (1978); *United States v. Herrold*, 962 F.2d 1131, 1137-38 (3d Cir. 1992), the warrants amply were supported by sufficient and independent probable cause. As explained below, the probable cause for the search warrants was based on information provided to law enforcement by Ms. Richardi, law enforcement's investigation that corroborated that information, <u>and</u> M.E.'s statements to law enforcement. Because a motion to suppress the evidence obtained from Jacobs' arrest would have failed, he is unable to meet the prejudice prong of *Strickland*, and cannot demonstrate a reasonable probability that he would have proceeded to trial but for counsel's failure to seek suppression of evidence on the basis of an unlawful arrest. As such, the Court denies habeas relief on Ground One.

---

[10] Evidence seized during an unlawful arrest, or statements made by the person unlawfully arrested while in custody, are products of the arrest and will be suppressed. Evidence with only a loose causal connection to an illegal arrest, however, will not be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). The mere existence of a "but for" causal connection does not mandate suppression. *Dunaway v. New York*, 442 U.S. 200, 217 (1979).

Likewise, there is no objective basis to believe that Jacobs (or a rational defendant in his position) would have elected to go to trial if counsel had moved to suppress the evidence obtained from the search warrants. A court reviewing the sufficiency of a search warrant affidavit must uphold the warrant "if a substantial basis exists to support the magistrate's probable cause finding, . . . even if a "different magistrate judge might have found the affidavit insufficient to support a warrant." *United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011). The duty of a reviewing court is "simply to ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed." *Gates*, 462 U.S. at 238. "Direct evidence linking the place to be searched to the crime is not required for the issuance of a search warrant. . . . A court is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *United States v. Hodge*, 246 F.3d 301, 305-06 (3d Cir. 2001). "The resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* (internal citation omitted).

Here, Jacobs contends that the search warrants were based on "unverified hearsay" and "unsworn statements" from M.E. and Ms. Richardi. (Pet. Mem. 8-9, 25.) He also contends that the search warrants lacked probable cause because they were based on "pure speculation" that Jacobs was committing a crime due to his history of committing sexual offenses.[11] (*Id.*) Jacobs

---

[11] Under *Franks v. Delaware*, a defendant is entitled to a hearing if he can make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and that the allegedly false statement is necessary to the finding of probable cause. *United States v. Rivera*, 347 F. App'x 833, 839 (3d Cir. 2009) (citing 438 U.S. at 155-56). To prevail, the defendant must demonstrate that what is false was either intentional or with reckless disregard by a preponderance of the evidence, and he must also demonstrate that, with the false material corrected, the affidavit's content is insufficient to establish probable cause. *Id.*; *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006). In such a case, the search warrant is voided and the fruits suppressed. *Franks*, 438 U.S. at 155-56. Jacobs has not provided the Court with any facts

argues that if the evidence obtained from execution of the search warrants were suppressed, the government would not have recovered the pornographic images of M.E.

The Supreme Court has held that "so long as a substantial basis for crediting the hearsay is presented[,] . . . hearsay may be the basis for a [search] warrant." *Jones v. United States*, 362 U.S. 257, 269-71 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S 83, 85 (1980); *see also Rugendorf v. United States*, 376 U.S. 528, 533 (1964); *Lemons v. Atl. City Police Dep't*, No. CIV. 06-3440RMB, 2009 WL 140514, at *3 (D.N.J. Jan. 20, 2009) ("It is well established that 'hearsay may be the basis for issuance of [an arrest] warrant so long as there is a substantial basis for crediting the hearsay.'") (internal quotations and citations omitted) (quoting *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)).

The issuing courts here had a substantial basis to credit the information provided by Ms. Richardi, since law enforcement officers had (1) confirmed that Jacobs was a convicted sex offender subject to community supervision for life, (2) confirmed that M.E. had previously visited Jacobs in July 2011, and (3) observed M.E. arrive at the airport, meet Jacobs, and kiss him before proceeding to the parking lot toward Jacobs's car. Jacobs does not dispute that law enforcement corroborated the information provided by Ms. Richardi in the manner described above. Thus, law enforcement had "substantial basis" to credit the hearsay information that Ms. Richardi had provided. Crucially, law enforcement then interviewed M.E. and learned in detail about Jacobs's sexual relationship with the minor, the pornographic images they had exchanged over the internet, and Jacobs's statement to M.E. that he (Jacobs) kept the images on CDs so he could look at them. As explained by another court in this District, "[W]here the declarant of the

---

or evidence showing that the state or federal search warrants included any false information necessary to the finding of probable cause.

hearsay contained in the search warrant affidavit is a victim . . . there is 'built-in' a substantial basis for crediting the reliability of the declarant and the credibility of [his] conclusion." *United States v. Brown*, No. 06-867 (JHR), 2008 WL 5484121, at *2 (D.N.J. Dec. 18, 2008) (Rodriguez, J.) (quoting *United States v. Nilsen*, 482 F. Supp. 1335, 1340 (D.N.J. 1980) (citing *United States v. Harris*, 403 U.S. 573, 581 (1971))). Thus, the search warrants were not simply based on "unverified hearsay" and "pure speculation," but were corroborated by independent evidence and law enforcement's own observations, as well as the victim's own statements about the conduct at issue. *See United States v. Anderson*, 293 F. App'x 960, 963 (3d Cir. 2008).

Because a motion to suppress the evidence of child pornography obtained from the state and federal search warrants would have failed, Petitioner cannot meet the prejudice prong of *Strickland*, and cannot demonstrate a reasonable probability that he would have proceeded to trial but for counsel's failure to seek suppression of evidence on the basis of defects in the search warrants. As such, the Court denies habeas relief on Ground Two.

### b. Failure to Seek Conditional Guilty Plea (Ground Three)

The Court also finds that counsel could not have been deficient for failing to secure a conditional guilty plea because the motions to suppress would have failed for the reasons stated above. Because it is well established that "counsel cannot be deemed ineffective for failing to raise a meritless claim." *Werts.* 228 F.3d at 202, counsel cannot be deemed ineffective for failing to obtain a conditional guilty plea so that Jacobs could bring a meritless motion to suppress. The Court also finds that no prejudice resulted from counsel's "failure" to negotiate a conditional guilty plea as there is no record evidence, or even an allegation, that the government would have consented to a conditional plea. *See Connolly v. United States*, No. 10-6819 (SRC), 2013 WL 530869, at *2 (D.N.J. Feb. 11, 2013) (Chesler, J.) ("The only plea option that would have

preserved [defendant's] right to appeal . . . is the conditional plea . . . , which requires the Government's consent. There is no evidence in the record that the Government might have consented [to a conditional plea]. Petitioner has therefore failed to prove the element of prejudice . . . ."); *Gould v. United States*, 657 F. Supp. 2d 321, 329 (D. Mass. 2009) (same). The Court will therefore deny habeas relief on Ground Three.

### c. Additional Allegations of "Coercion" and Insufficient Evidence – Raised in Supporting Memorandum

Other than his contention that the motion to suppress would have succeeded, Jacobs has not provided any facts or evidence to support his conclusory assertions that counsel coerced him into pleading guilty, or sought to extract a guilty plea from him in the face of insufficient evidence. (*See* Pet. Mem.7-8.) Mr. Schafer has submitted a sworn affidavit attesting that the government initially sought to have Jacobs plead guilty to receipt or distribution of child pornography and would have pursued a charge of production of child pornography if a pre-indictment resolution could not be reached. (*See* Schafer Aff., ¶ 10.) Jacobs does not contest that the government initially pursued these more serious charges. The May 2 plea offer called for Jacobs to plead guilty to the lesser charge of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5) and (b)(2), rather than the more serious distribution/receipt charge that the initial plea offer had contemplated. (*See* Ex. R.) Given Jacobs's prior convictions, the lesser possession charge carried a statutory mandatory minimum sentence of ten years' imprisonment – five years less than the mandatory minimum term that would have been imposed under the government's initial plea offer. *Compare* 18 U.S.C. § 2252A(b)(1) (distribution/receipt) with § 2252A(b)(2) (possession).

In his correspondence with Jacobs prior to the plea hearing, Mr. Schafer advised Jacobs of the benefits of the May 2 plea offer but made absolutely clear to his client that ultimate decision

was Jacobs's to make: "It is a difficult choice, but one that only you can make. Whatever choice you decide upon, we will inform the Court on September 13, after which time there will be no going back." [12] (Ex. Q.) Plaintiff has not alleged any contrary statements made by counsel that would suggest coercion.

The transcript of the plea hearing also belies Jacobs's allegation of coercion. During the plea hearing, the District Court advised and questioned Jacobs pursuant to Rule 11(b)(1) of the Federal Rules of Criminal Procedure; determined that there was sufficient factual basis for his guilty plea; and ensured that the plea was knowing and voluntary and that there were no questions as to Jacobs's comprehension or competence.[13] (Ex. S, 12:7-25; 14:13-15.) Jacobs accepted responsibility for his offense, and acknowledged explicitly that he was pleading guilty voluntarily and of his own free will. Jacobs's sworn statements at the plea hearing that no one forced him to plead guilty also carry a presumption of truthfulness. *See United States v. Dickler*, 64 F.3d 818, 823 n.7 (3d Cir. 1995) ("Sworn statements in a plea proceeding are conclusive

---

[12] In the context of plea offers, counsel is obligated to provide information sufficient to allow the client to make an intelligent decision whether to plead guilty or proceed to trial. *See Frye v. Missouri*, 132 S. Ct. 1399, 1406-09 (2011); *United States v. Day*, 969 F.2d 39, 42-43 (3d Cir. 1992). Such information typically includes, at a minimum "the comparative sentence exposure between standing trial and accepting a plea offer . . . ." *Day*, 969 F.2d at 43. In his correspondence, Mr. Schafer outlined for Jacobs, among other things, the evidence, counsel's legal analysis and conclusion that that the evidence likely would not be suppressed, his belief that the evidence would result in a conviction at trial, the probable consequences of not accepting the May 2 plea offer, and the relative sentencing exposures. (*See* Exs. M-Q.)

[13] Fed. R. Crim. P. 11 was formulated to ensure that a defendant's guilty plea represents a voluntary and intelligent decision to waive fundamental protections. *United States v. Powell*, 269 F.3d 175, 180 (3d Cir. 2001) (citing *North Carolina v. Alford*, 400 U.S. 25, 30 (1970); *McCarthy v. United States*, 394 U.S. 459, 465 (1969)). Accordingly, under Fed. R. Crim. P. 11(c) "[b]efore accepting a plea of guilty ... the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands ... the maximum possible penalty provided by law, including the effect of any ... supervised release term." Nevertheless, not all Rule 11 errors invalidate a guilty plea. Fed. R. Crim. P. 11(h), entitled "Harmless Error," provides that "[a]ny variance from the procedures required by [Rule 11] which does not affect substantial rights shall be disregarded." *See Powell*, 269 F.3d at 180.

unless the movant can demonstrate compelling reasons for questioning their truth"); *Zillich v. Reid*, 36 F.3d 317, 320 (3d Cir. 1994) (habeas petitioners challenging guilty pleas face a heavy burden, statements under oath carry a strong presumption of verity); *United States v. Stewart*, 977 F.2d 81, 84 (3d Cir. 1992) ("The ritual of the colloquy is but a means toward determining whether the plea was voluntary and knowing. A transcript showing full compliance with the customary inquiries and admonitions furnishes strong, although not necessarily conclusive, evidence that the accused entered his plea without coercion and with an appreciation of its consequences").

Because the Court has rejected Jacobs's argument that a motion to suppress the evidence of child pornography would have been successful, Jacobs's belief that the evidence was insufficient to support a conviction for possession of child pornography is likewise unfounded. To prove that Jacobs violated § 2252A(a)(5), the government was required to prove (1) that Jacobs knowingly possessed at least one image of a minor engaged in sexually explicit conduct; and (2) that Jacobs knew that at least one of the images contained a picture of a real minor engaged in sexually explicit conduct.[14] *See United States v. Marchand*, 308 F. Supp. 2d 498, 503 (D.N.J. 2004). Here, forensic examination of the electronic media located in Jacobs's residence and storage unit uncovered multiple nude, sexually explicit images and videos of M.E. (a real

---

[14] Here, Petitioner pleaded guilty to one count of possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B). (*See* Crim. Act. No. 13-601, at ECF No. 23, Judgment of Conviction dated July 9, 2014.) That provision mandates that criminal liability can only be found in cases where the accused "knowingly possesses" child pornography. *See* 18 U.S.C. § 2252A(a)(5)(B). Although the initial negotiations contemplated more serious charges, Petitioner did not plead guilty to receipt of child pornography pursuant to 18 U.S.C. § 2252A(a)(2). *See, e.g., United States v. Miller*, 527 F.3d 54, 63–64 (3d Cir. 2008) (explaining that "[t]he evidence required to establish the intent-element of § 2252A(a)(2) may be greater than that required to establish the intent-element of § 2252A(a)(5)(B) because, while a person who "knowingly receives" child pornography will necessarily "knowingly possess" child pornography, the obverse is not the case").

minor), as well as sexually explicit instant messages between Jacobs and M.E., which demonstrated that Jacobs found out that M.E. was a minor and continued to possess the relevant child pornography.[15] (Ex. I.)

For the reasons explained above, the Court rejects Jacobs's conclusory allegation that his plea was not knowing and voluntary and was the result of coercion by his counsel, and denies habeas relief on this claim.

### d. Inaccuracies in Factual Basis for Plea --Raised For First Time on Reply

For the first time in his Reply Brief, Jacobs also appears to allege that the factual basis for his plea is insufficient or inaccurate, and that Mr. Schafer was ineffective for failing to correct the inaccuracy during the plea colloquy. (ECF No. 17-1, Affidavit in Support of Reply Brief at ¶¶ 1-6.) More specifically, Jacobs asserts that the timeframe for his possession of child pornography, i.e., from February 2011 through September 2011 is inaccurate because Petitioner did not know that M.E. was a minor until May 2011.[16]  (*Id.* at ¶¶ 1-6.)

Even if the Court were to consider this new claim, it would not warrant habeas relief. Jacobs does not dispute that he received the mandatory minimum sentence of 120 months for possession of child pornography, as required by his prior criminal history. *See* 18 U.S.C. §

---

[15] Additionally, as noted by the government, the government also could have sought to present at trial M.E.'s testimony to confirm the information that he provided during his interview with law enforcement on September 10, 2011.

[16] Here, the Court need not consider new grounds raised on Reply where the movant was provided with the required *Miller* notice and had the opportunity to raise this issue in his Amended § 2255 Motion. *See, e.g., Judge v. United States*, 119 F. Supp. 3d 270, 284 (D.N.J. 2015), *certificate of appealability denied* (Mar. 23, 2016) (declining to consider new claim on reply where Petitioner was provided ample opportunity to include those claims in his amended motion, but chose not to do so, instead waiting to raise these claims for the first time in his reply brief); *Soto v. United States*, No. CIV.A. 04-2108 (JAG), 2005 WL 3078177, at *6 (D.N.J. Nov. 16, 2005) *aff'd*, 313 F. App'x 496 (3d Cir. 2008) (finding that "Petitioner must not be allowed at this stage in the litigation to assert a new claim in a reply brief" where Petitioner received a *Miller* notice pursuant to *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999)).

2252A(b)(2). Jacobs does not deny that he learned that M.E. was a minor in May 2011 and that he nevertheless continued to possess the relevant pornographic images and video of M.E. after learning that M.E. was a minor. Whether Jacobs "knowingly possessed" child pornography for four months or seven months did not affect his sentence in any way, and he received the lowest possible sentence under the statute given his criminal history. As such, Jacobs is unable to establish that he was prejudiced by this alleged error, and his claim regarding inaccuracies in the factual basis for his plea does not warrant habeas relief.

### e. The Court will Deny a Certificate of Appealability

Jacobs has not made a substantial showing of the denial of a constitutional right. Therefore, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(1)(B). *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

### V. CONCLUSION

For the reasons stated in this Opinion, the Court denies the Motion and denies a certificate of appealability. An appropriate Order follows.

_/s/ Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.

Date: September 15, 2017